*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRILLIUM CYBER, INC.,

      Plaintiff/Counterdefendant-Appellant,

v

CANBUSHACK, INC., and ROBERT LEALE,

      Defendants/Counterplaintiffs-
      Appellees.

UNPUBLISHED
April 23, 2020

No. 345494
Oakland Circuit Court
LC No. 2017-161732-CB

Before: GADOLA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

In July 2017, the parties entered into an agreement for plaintiff to purchase the assets of defendant CanBusHack, Inc. ("CBH"), whose chief executive officer is defendant Robert Leale. When plaintiff failed to pay CBH the agreed amount on the specified effective date, or within two weeks thereafter, defendants rescinded the agreement. Plaintiff subsequently filed this action to enforce the agreement. After the parties filed cross-motions for summary disposition, the trial court denied plaintiff's motion and granted defendants' motion pursuant to MCR 2.116(C)(10). Plaintiff appeals as of right. We affirm.

Plaintiff and defendants entered into an Asset Purchase Agreement with a stated effective date of July 26, 2017. Leale also signed an agreement to act as a consultant for plaintiff ("the Consulting Agreement"), which was incorporated into the Asset Purchase Agreement. Paragraph 3 of the Asset Purchase Agreement states:

> 3. **Payment.** On the Effective Date, [Plaintiff] will submit to CBH by wire transfer the sum of twenty-two thousand United States dollars (USD22,000).

At the time the agreement was executed, Leale was in Las Vegas, Nevada, organizing a conference for CBH. It is undisputed that plaintiff did not make the required payment on the specified effective date of the Asset Purchase Agreement. On July 30, 2017, Kenneth McDonnell, the chief operating officer of plaintiff's parent company, informed Leale that he needed to open a bank account in the United States to enable plaintiff to make the $22,000 payment, which he intended to do on "Tuesday," August 1, 2017. Leale simply responded, "Great." When payment still had

-1-

not been received by August 9, 2017, defendants notified plaintiff that they were rescinding the agreement. Plaintiff later filed this action to enforce the agreement.

After the parties filed cross-motions for summary disposition, the trial court denied plaintiff's motion and granted defendants' motion. The trial court ruled that "[p]laintiff's obligation to pay the purchase price is a substantial term . . . of the Purchase Agreement" and that "[p]laintiff's failure to pay the purchase price when required is a material failure of performance . . . and acts as a bar to Plaintiff's lawsuit for any alleged Defendant non-performance."

## I. SUBSTANTIAL BREACH

Plaintiff argues that the trial court erred by granting summary disposition for defendants on the ground that plaintiff's failure to make the required $22,000 payment as specified in the Asset Purchase Agreement was a substantial breach of the agreement that precluded it from enforcing the agreement. We disagree.

The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10). A trial court's decision on a motion for summary disposition is reviewed de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995).

A party claiming breach of contract must prove by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) damages resulted to the party claiming a breach. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). A party who first breaches a contract cannot maintain an action against the other party for his subsequent breach or failure to perform. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). This rule only applies when the initial breach is substantial. *Id*.

Whether a breach is substantial depends on "whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Able Demolition, Inc v City of Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (citation omitted). A substantial breach is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted).

"[R]escission is permissible when there is failure to perform a substantial part of the contract or one of its essential items, or where 'the contract would not have been made if default in that particular had been expected or contemplated.' " *Adell Broadcasting Corp v Apex Media Sales, Inc*, 269 Mich App 6, 13-14; 708 NW2d 778 (2005).

This Court reviews de novo, as a question of law, the proper interpretation of a contract. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

> "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001). When interpreting a contract, our primary obligation "is to give effect to the parties' intention at the time they entered into the contract." *Miller-Davis Co*, 495 Mich at 174. To do so, we examine "the language of the contract according to its plain and ordinary meaning." *Id*. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written . . . ." *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). [*Innovation Ventures*, 499 Mich at 507.]

If the contractual language is unambiguous and reasonable minds could not differ concerning the application of the terms or conditions to undisputed material facts, summary disposition should be granted to the proper party. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 612; 792 NW2d 344 (2010).

The Asset Purchase Agreement provides, in pertinent part:

> This Asset Purchase Agreement ("Agreement") is effective as of July 26, 2017 ("Effective Date"), and is made by and between CanBusHack, Inc., a Michigan corporation, . . . and Trillium Cyber, Inc., a Delaware corporation, . . . .

The agreement further requires that "[o]n the Effective Date, [plaintiff] will submit to CBH by wire transfer the sum of twenty-two thousand United States dollars (USD22,000)." It is undisputed that the specified $22,000 payment was not made on the agreement's effective date, or at any time before defendants rescinded the agreement more than two weeks later. The parties' agreement is not ambiguous with regard to when payment was due.

Despite the clear and unambiguous language of § 3 of the Asset Purchase Agreement, plaintiff argues that the timing of the specified payment was not crucial. However, it is also undisputed that plaintiff had not established a bank account in this country to enable it to wire the money to CBH before defendants rescinded the agreement. Even if plaintiff's failure to pay the specified $22,000 amount on the stated effective date is not considered a substantial breach, there is no genuine issue of material fact that plaintiff substantially breached the agreement by failing to make any effort to make the specified payment for at least two weeks after the agreement's stated effective date. While plaintiff indicated that it would follow through with payment days after the agreement was signed, there was no progress toward making that payment. Defendants waited more than two weeks for plaintiff to make the necessary arrangements to make the required payment, but no payment was made.

Under the Asset Purchase Agreement, plaintiff's performance consisted primarily of paying for the assets it was acquiring from CBH. More than two weeks had passed since the payment was due before defendants opted to rescind the agreement. The agreement also required that CBH, within 30 days of the effective date of the agreement, either dissolve or "remove CanBusHack and any derivations thereof from its name." Given that CBH had a limited period in

which it was obligated to perform, the trial court did not err by finding that plaintiff's failure to make the required payment on the specified effective date, or at any point in the following two weeks, qualified as a substantial breach of the parties' agreement. Because plaintiff substantially breached the agreement, it was not entitled to maintain this action against defendants for breach of contract and defendants were entitled to rescind the contract. *Adell Broadcasting*, 269 Mich App at 13-14; *Michaels*, 206 Mich App at 650. Accordingly, the trial court did not err by granting defendants' motion on the basis that plaintiff substantially breached the parties' agreement by failing to make the required payment.

## II. FRUSTRATION OF PERFORMANCE

Plaintiff argues that it should not be prohibited from maintaining this action for breach of contract because defendants did not provide the necessary banking information to enable plaintiff to complete the wire transfer, thereby frustrating or preventing plaintiff from satisfying its performance obligation under the Asset Purchase Agreement. We disagree.

In *Kiff Contractors, Inc v Beeman,* 10 Mich App 207, 210; 159 NW2d 144 (1968), this Court stated:

> The general rule is that a party to a contract cannot prevent, or render impossible, performance by the other party and still recover damages for nonperformance. See 17A, CJS, Contracts § 468, at pp 638-642; and 5 Williston on Contracts (3d ed) § 677, p 224. In *Barton v Gray* (1885), 57 Mich 622, 636, the Supreme Court cited a long line of venerable precedents in support of the principle that "no one who causes or sanctions the breach of an agreement can recover damages for its non-performance."

The Asset Purchase Agreement required plaintiff to make the specified $22,000 payment by wire transfer. Leale acknowledged that he did not provide anyone associated with plaintiff a bank account number or routing number for the wire transfer to be made. However, nothing in the parties' agreement required defendants to act to assist plaintiff in meeting its payment obligation. Moreover, plaintiff did not present any evidence that it requested CBH's banking information to enable it to make the required payment, or that defendants refused to provide that information. Indeed, it is undisputed that plaintiff was not prepared to make the specified wire transfer because it had not yet set up a bank account in this country to enable it to make the transfer.

Plaintiff argues that defendants had an obligation to provide the necessary banking information as a condition precedent to plaintiff's performance obligation to wire transfer the $22,000 amount. A condition precedent "is a fact or event that the parties intend must take place before there is a right to performance." *Able Demolition*, 275 Mich App at 583 (citations omitted). "Failure to satisfy a condition precedent prevents a cause of action for failure of performance." *Id*. (citation omitted).

Plaintiff failed to show that it was defendants who prevented it from performing its obligation to pay the $22,000 by wire transfer. Even if it can be implied that defendant would have to provide plaintiff with the necessary information to permit plaintiff to make a wire transfer, plaintiff did not submit any evidence that it requested this information and defendant refused to

provide it. Rather, the record indicates that plaintiff was not in a position to make a wire transfer because it did not have a bank account set up to make the transfer. There is no basis for a jury to find that defendants either were obligated to act before plaintiff could transfer the money, or that plaintiff was ready to perform as specified in the parties' agreement, but were hindered from doing so by defendants. Accordingly, the trial court did not err by rejecting plaintiff's argument that it should be excused from its nonperformance because defendants prevented that performance.

## III. MODIFICATION OR WAIVER

Plaintiff also argues that the trial court erred by rejecting its argument that the parties waived or modified plaintiff's performance obligation under the Asset Purchase Agreement. We disagree. The trial court rejected this argument because the Asset Purchase Agreement provided, in pertinent part:

> (a) This Agreement constitutes the entire agreement between the parties hereto with respect to the transactions contemplated herein. The parties hereto expressly agree that this Agreement supersedes and rescinds any prior written agreement between them pertaining to the sale of the Assets. This Agreement may not be amended, modified or discharged orally or otherwise than in writing executed by the Seller and Buyer.

> * * *

> (e) No amendment or waiver of any provision of this Agreement shall be binding on either party unless consented to in writing by such party. No waiver of any provision of this Agreement will constitute a waiver of any other provision, nor shall any waiver constitute a continuing waiver unless otherwise provided.

In *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364-365; 666 NW2d 251 (2003), the Court explained:

> [P]arties to a contract are free to *mutually* waive or modify their contract notwithstanding a written modification or anti-waiver clause because of the freedom to contract. However, with or without restrictive amendment clauses, the principle of freedom to contract does not permit a party *unilaterally* to alter the original contract. Accordingly, mutuality is the centerpiece to waiving or modifying a contract, just as mutuality is the centerpiece to forming any contract.

> This mutuality requirement is satisfied where a waiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract. In cases where a party relies on a course of conduct to establish waiver or modification, the law of waiver directs our inquiry and the significance of written modification and anti-waiver provisions regarding the parties' intent is increased. [Emphasis in original.]

As explained in *Quality Prod*, 469 Mich at 374-375, when a party relies on a course of conduct to demonstrate modification of an agreement containing an antiwaiver clause, rather than an express agreement, there must be clear and convincing evidence of a waiver:

> As we have stated in other contexts, a waiver is a voluntary and intentional abandonment of a known right. *Roberts v Mecosta Co Hosp*, 466 Mich 57, 64 n 4; 642 NW2d 663 (2002); *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999). This waiver principle is analytically relevant to a case in which a course of conduct is asserted as a basis for amendment of an existing contract because it supports the mutuality requirement. Stated otherwise, when a course of conduct establishes by clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms, the requirement of mutual agreement has been satisfied.

> Further, whereas an original contract's written modification or anti-waiver clauses do not serve as barriers to subsequent modification by express mutual agreement, the significance of such clauses regarding the parties' intent to amend is heightened where a party relies on a course of conduct to establish modification. This is because such restrictive amendment clauses are an *express mutual statement* regarding the parties' expectations regarding amendments.

> Accordingly, in assessing the intent of the parties where the intent to modify is not express, such restrictive amendment provisions are not necessarily dispositive, but are highly relevant in assessing a claim of amendment by course of conduct. Any clear and convincing evidence of conduct must overcome not only the substantive portions of the previous contract allegedly amended, but also the parties' express statements regarding their own ground rules for modification or waiver as reflected in any restrictive amendment clauses.

Mere silence is not proof of a waiver. As explained in *Quality Prod*, 469 Mich at 379, silence only establishes forfeiture, not a waiver:

> This is not to say that waiver requires an oral or written expression of amendment. It is well settled that a course of affirmative conduct, particularly coupled with oral or written representations, can amount to waiver. *Minkus v Sarge*, 348 Mich 415, 421-422; 83 NW2d 310 (1957) (holding that an oral request and statement that the request was an "extra" to the contract, coupled with the fact that the disputed matters were "matters of frequent conversation" between the plaintiff and the defendant, was inconsistent with a claim that there was no waiver). However, we note that waiver and forfeiture are related, but distinct, concepts. *Roberts, supra*. While waiver requires an intentional and voluntary relinquishment of a known right, a forfeiture is the failure to assert a right in a timely fashion. *Id*. at 69. In the present case, plaintiff's alleged facts amount only to forfeiture, which is insufficient to establish clear and convincing evidence of a mutual assent to modify or waive an express contract as a matter of law.

Plaintiff argues that the parties mutually agreed to modify the terms of their agreement with respect to when payment was due. In support of this argument, plaintiff relies on the following text-message exchange between McDonnell and Leale on July 30, 2017:

> [*McDonnell:*] I am working on the process to pay your $22K and $12K. To do so, we need to open a bank account for Trillium Cyber, Inc. I will commence that when I land in CA on Tuesday.

> [*Leale:*] Great.

July 30, 2017, was a Sunday. Therefore, the following Tuesday would have been August 1, 2017. To the extent that this exchange establishes a question of fact whether there was a mutual modification of the parties' agreement to extend the time when payment was due, it does not support a finding that the payment period was extended to August 9, when defendants rescinded the agreement. Leale's response cannot be construed as demonstrating his assent to extending the payment date indefinitely. Rather, Leale's response of "Great" must be understood in the context of McDonnell's message, which referred to "Tuesday" as the date when McDonnell intended to open a bank account, enabling plaintiff to pay the $22,000. The following Tuesday would have been August 1. Thus, Leale's response cannot be construed as demonstrating his mutual assent to an extension period beyond that date. Plaintiffs still had not opened a bank account or made the required payment more than a week later, by August 9, 2017, when defendants elected to rescind the agreement. Thus, even if defendants agreed to some modification of the time for plaintiff's performance, there is no genuine issue of material fact that plaintiff did not meet any revised deadline on which the parties may have mutually agreed.

Plaintiff alternatively argues that defendants waived any breach with regard to timely payment. However, plaintiff does not offer any additional evidence in support of this argument, but rather again relies on Leale's alleged concurrence in McDonnel's July 30 text message. The text exchange does not demonstrate by clear and convincing evidence that the parties mutually agreed to waive plaintiff's obligation to timely make the $22,000 payment required under the terms of the Asset Purchase Agreement. Leale's response to McDonnell's text message at most expressed his satisfaction that plaintiff would establish a bank account on August 1st to facilitate the required $22,000 payment, a promise that plaintiff never fulfilled.

Plaintiff also argues that there were other issues that needed to be resolved before it could make the specified payment to defendants. Despite the $22,000 payment amount clearly specified in the Asset Purchase Agreement, plaintiff contends that the parties agreed that this amount would be adjusted by certain setoffs based on revenue from the Las Vegas conference, which was in progress when the Asset Purchase Agreement was signed. This argument also lacks merit.

The Asset Purchase Agreement clearly and unambiguously specifies a payment amount of $22,000, and does not contain any provision allowing for any setoffs or other adjustments to that amount. Further, there is no evidence that the parties mutually agreed to modify the $22,000 payment amount specified in the Asset Purchase Agreement. Plaintiff relies on an affidavit from McDonnell to support its position that, at the closing, the parties agreed "to offset profits owed by Mr. Leale to Trillium on . . . product sales against the $22,000 purchase price." However, plaintiff did not produce any evidence that defendants consented in writing to any such change to the Asset

Purchase Agreement. Moreover, in McDonnell's July 30 text message to Leale, he referenced the specified $22,000 payment amount without mentioning any adjustments to be made to that figure. McDonnell's unsupported affidavit does not constitute clear and convincing evidence that the parties mutually agreed to (1) modify the $22,000 payment amount specified in the Asset Purchase Agreement, and (2) delay plaintiff's payment obligation under the Asset Purchase Agreement until the profits from the Las Vegas convention could be calculated. To the extent that the parties may have had a separate agreement for plaintiff to share in the revenue from the Las Vegas convention, plaintiff's remedy would have been to seek repayment from CBH pursuant to that separate agreement.

In sum, the trial court did not err by finding that plaintiff failed to establish a genuine issue of material fact to support its argument that the parties mutually waived or modified plaintiff's payment obligation under the Asset Purchase Agreement, and thereby relieved plaintiff of its performance obligation before defendants rescinded the agreement. For these reasons, the trial court did not err by granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). Therefore, it is unnecessary to consider defendant's alternative ground for affirmance under MCR 2.116(C)(5), on the basis that plaintiff lacked the legal capacity to bring this action because it was not a duly organized corporation at the time the Asset Purchase Agreement was executed.

Affirmed.

/s/ Michael F. Gadola
/s/ Cynthia Diane Stephens