## FLAMM v SCHERER

1. CONTRACTS—EVIDENCE—PAROL EVIDENCE—NECESSARY TERM.

Evidence of parties' oral agreement relative to the type of pickling cucumber seed which plaintiff buyer had promised to furnish defendant grower was admissible to explain and supplement the parties' written contract governing the sale of the pickles, even though the contract stated that the buyer would not be responsible for any statements, promises, or conditions not in the written contract where the contract was silent as to the type of seed to be furnished, because the parol evidence neither modified nor rescinded the terms of the written agreement, but only explained the contract (MCLA 440.2202, 440.2209).

2. CONTRACTS—BREACH—MATERIAL BREACH.

Plaintiff buyer's failure to furnish to defendant grower pickling cucumber seed known as SMR 58, as agreed, constituted a material breach of the parties written contract where three of defendant's witnesses, as well as plaintiff's expert witness in his deposition, testified that SMR 58 seed produced a faster pickle crop than the SMR 18 seed which plaintiff supplied to defendant, an early crop was important because plaintiff under the contract had the right to decide when the pickle season was closed, and plaintiff's fieldman testified that plaintiff's pickle resale contract had to be filled by August 5.

3. CONTRACTS—BREACH—RIGHT TO SUE.

Plaintiff buyer's failure to deliver to defendant grower the type of pickling cucumber seed they had agreed upon constituted a breach of contract precluding plaintiff from maintaining an action for damages against defendant where defendant told plaintiff that he would not plant the nonconforming seed which plaintiff had furnished and that all his cucumbers grown from

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts § 77.
[2] 17 Am Jur 2d, Contracts § 446.
[3] 17 Am Jur 2d, Contracts § 365.
[4] 17 Am Jur 2d, Contracts §§ 82, 83.

seed which defendant purchased would be sold to another buyer, because one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform.

4. CONTRACTS—PRICE.

Plaintiff buyer's failure to fix a final price for defendant grower's pickling cucumbers allowed defendant to treat the contract as cancelled where their contract provided that the plaintiff, at any time during the harvesting season, could increase the price listed for various grades of pickles up to 25% on verbal or written notice to the defendant, evidence showed that the plaintiff had agreed orally to meet all legitimate competition, and the defendant after receiving an offer, gave the plaintiff an opportunity to meet the price, but plaintiff did not reply.

Appeal from Van Buren, David Anderson, Jr., J. Submitted Division 3 January 5, 1972, at Grand Rapids. (Docket No. 9927.) Decided April 24, 1972.

Complaint by Seymour Flamm against John W. Scherer for breach of sales contract. Judgment of no cause of action. Plaintiff appeals. Affirmed.

*Butzbaugh, Page & Butzbaugh,* for plaintiff.

*Lee Boothby,* for defendant.

Before: FITZGERALD, P. J., and R. B. BURNS and TARGONSKI,* JJ.

TARGONSKI, J. The parties entered into an agreement on April 28, 1966 and a supplementary agreement on the same day. Both documents were drafted by the representative of the plaintiff and executed by both parties. Under the terms of the agreement the defendant agreed to sell to the plaintiff all pickling cucumbers grown on 80 acres during the 1966 season from seed furnished by the

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

plaintiff. The price of the pickle seed furnished by the plaintiff was to be deducted from the first payment. The final paragraph of the contract is very important in the determination of the issues in this case and reads as follows:

"It is expressly understood that BUYER WILL NOT BE RESPONSIBLE for any promises or conditions, statements or representations OTHER THAN THOSE CONTAINED HEREINABOVE."

The handwritten supplementary agreement provided that 15 cents per 50-pound bushel would be paid to the defendant for handling and loading of pickles shipped from his farm.

A dispute arose between the parties in May, 1966, at which time the plaintiff's fieldman, Mr. Ott, delivered the seed pursuant to the terms of the contract. The seed delivered was SMR 18 while the defendant was desirous of planting SMR 58. The defendant testified that he told Mr. Ott that he would not use the seed and there is no dispute that the defendant did not use this seed. Both defendant and his wife testified that the type of seed to be furnished by the plaintiff was discussed at the time the contract was entered into and that the plaintiff agreed to furnish SMR 58. Plaintiff, on the other hand, contends that while there was general conversation about the variety and defendant may have said he preferred SMR 58 there was no agreement to that effect.

On July 15, 1966 a representative of Matthew Wells of Toronto, Ontario, Canada contacted the defendant approximately four to six days before harvesting was scheduled to begin and offered him about $30,000 more for his pickles than the local market price. Such development was attributable to a crop failure that season in Canada. Defendant

communicated the Canadian offer to the plaintiff who did not offer to pay any more money for the defendant's pickles. The defendant then shipped his pickles to Matthew Wells on a Sunday and the following Tuesday he was served with a summons in this case.

At the conclusion of a trial held August 28, 1969, the trial court, which heard the matter without a jury, found that the evidence preponderated in the defendant's favor; that the parties did in fact orally agree that the seed which was to be furnished by the plaintiff was SMR 58; that SMR 58 was substantially different from SMR 18 because it produced a faster crop; and that faster production was an essential element of the agreement between the parties because of the contract provision giving the buyer the right to declare the season closed and because of testimony by the plaintiff's agent that the resale contract for which he had made this agreement had to be filled by August 5th. The trial court held that upon the failure of the plaintiff to furnish the proper seed, defendant was relieved of performance under the contract and was not liable in damages. A judgment of no cause of action was entered.

The parties present six issues on appeal for our consideration. We will consider each of those issues separately in turn.

## I. *Was the evidence of the oral agreement relative to the type of seed admissible?*

It is the plaintiff's contention that the contract could not be modified except by a written instrument under the provisions of § 2209 of the Uniform Commercial Code—Sales which appears as MCLA 440.2209; MSA 19.2209 and which reads in pertinent part as follows:

"(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party."

Plaintiff further contends that if the above section is not applicable then parol evidence relative to type of seed was still not admissible because it tended to contradict the written terms of the agreement rather than explaining or supplementing them as permitted by § 2202 of the Uniform Code referred to above being MCLA 440.2202; MSA 19.2202 which reads:

"Sec. 2202. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

"(a) by course of dealing or usage of trade (section 1205)[1] or by course of performance (section 2208);[2] and

"(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

It is the defendant's contention that the trial court properly admitted testimony concerning the type of seed under the terms of § 2202, *supra,* to explain and supplement the agreement and that § 2209, *supra,* does not apply because the parol testimony offered regarding the variety of seed did

---

[1] MCLA 440.1205; MSA 19.1205

[2] MCLA 440.2208; MSA 19.2208

not constitute a modification nor a rescission of the agreement.

Defendant's contentions are supported not only by a reading of the cited statutes and the trial court's opinion, but also by comments of the National Conference of Commissioners and the American Law Institute, which are recorded in MSA following § 2202. The portions of such comments as are pertinent to the issues in this matter appear as follows:

"Purposes:

"1. This section definitely rejects:

"(a) Any assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon;

"(b) The premise that the language used has the meaning attributable to such language by rules of construction existing in the law rather than the meaning which arises out of the commercial context in which it was used; and

"(c) The requirement that a condition precedent to the admissibility of the type of evidence specified in paragraph (a) is an original determination by the court that the language used is ambiguous.

*   *   *

"3. Under paragraph (b) consistent additional terms, not reduced to writing, may be proved unless the court finds that the writing was intended by both parties as a complete and exclusive statement of all the terms. If the additional terms are such that, if agreed upon, they would certainly have been included in the document in the view of the court then evidence of their alleged making must be kept from the trier of fact."

The contract prepared by the plaintiff is silent on the question of the type of seed that was to be furnished by him although it does specify that he was to furnish the seed. Consequently, there is no contradiction, modification, or rescission arising

out of the oral testimony pertaining to an agreement on the variety of seed to be furnished. Such testimony was supplementary or explanatory.

## II. *Was there a breach of contract by the plaintiff?*

Plaintiff maintains that it was his decision to determine the variety of seed furnished and that his choice was SMR 18. He states that he had no duty to furnish SMR 58 and failure to do so could not be held to constitute a breach of the contract. The defendant presents no argument whatever on this issue.

We believe that the determination of the first issue controls in determining whether the plaintiff had breached the contract. Having determined that testimony relative to the type of seed promised by the plaintiff was admissible, the trial court's finding of fact that the parties did agree orally that the seed to be furnished by the plaintiff was to be SMR 58 is not clearly erroneous since there was testimony by both the defendant and his wife that in fact there was such an agreement by the plaintiff to furnish SMR 58. Plaintiff's testimony to the contrary merely presents a question of fact and a question of credibility for the trier of the facts. There is no dispute that the plaintiff did not furnish SMR 58. The trial court's finding that the breach was a material one is supported not only by three of the defendant's witnesses who testified that SMR 58 produced a crop faster but also by plaintiff's expert witness in his deposition. The importance of the early crop is determined by the provision in the contract that the plaintiff had the right to determine when the season was closed and the testimony of his fieldman that the plaintiff's resale contract had to be filled by about August 5.

### III. *If the plaintiff breached the contract, was the defendant excused from performing under the contract?*

Argument is posed by the plaintiff that even if he had breached the contract by not furnishing the variety of seed agreed upon, the defendant was not excused from performing because he never gave the plaintiff notice that he was cancelling or rescinding the contract. Plaintiff relies upon the provisions of § 2106 of the Uniform Commercial Code—Sales, being MCLA 440.2106; MSA 19.2106. The portion of that section relied upon by the plaintiff reads as follows:

"(3) 'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.

"(4) 'Cancellation' occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of 'termination' except that the cancelling party also retains any remedy for breach of the whole contract or any unperformed balance."

Plaintiff had notice that the defendant would not be performing under the contract because of his failure to furnish the specified seed when defendant communicated to him his refusal to plant the seed which the plaintiff had furnished. The authorities cited by the plaintiff on this question deal with the question of rescission and there is no such issue in this case. A rescission of a contract is distinguished from a breach of contract. See *Wall v Zynda,* 283 Mich 260 (1938). The rule in Michigan is that one who first breaches a contract cannot maintain an action against the

other contracting party for his subsequent breach or failure to perform. 5 Callaghan's Michigan Civil Jurisprudence, § 249, pp 820–821.

The plaintiff first breached the contract by his failure to deliver the seed as agreed upon and he cannot thereafter maintain an action for damages against the defendant. *Kiff Contractors, Inc v Beeman,* 10 Mich App 207 (1968).

### IV. *Did the defendant have the right to treat the contract as cancelled upon the plaintiff's failure to determine the final price?*

Defendant alone raises this issue and presents the only argument with reference to it. It is his contention that if he was not excused from performance by the plaintiff's failure to supply SMR 58, defendant was entitled to treat the contract as cancelled when the plaintiff failed to fix the final price for the defendant's pickles. It is his position that the provision in the April 28th contract did not set a final price. This contract stated that the buyer, at any time during the harvesting season, could increase the price as listed for the various grades up to but not exceeding 25% on verbal or written notice to the grower. The printed form of the contract read "increase or decrease". However, the words "or decrease" were inked out and initialled by the plaintiff at the defendant's request. In effect, this left the proviso in the contract that the buyer might increase the price of the pickles up to 25% more than specified in the contract. The elimination of the provision with reference to decrease would appear to make the provision for increase surplusage since it is obvious that even without such a provision the buyer could pay more than he had contracted to pay. The defendant

would have no cause for complaint because of any such increase in payment.

Defendant is most persuasive in his argument that this provision was also explained and supplemented by oral testimony to the effect that at the time of the signing of the contract plaintiff stated that he would meet all legitimate competition. This contention is substantiated materially in several instances in the transcript of the testimony. Defendant testified that after receiving his Canadian offer he gave the plaintiff an opportunity to meet the price therein but he heard nothing from the plaintiff or his agent.

Subsection (3) of § 2305 of the Uniform Commercial Code—Sales, being MCLA 440.2305; MSA 19.2305 provides:

"(3) When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of one party the other may at his option treat the contract as cancelled or himself fix a reasonable price."

In light of the language of § 2305, *supra,* quoted above, plaintiff's failure to fix a final price would be considered a justification for the defendant to treat the contract as cancelled even if plaintiff's failure to provide SMR 58 seed is not considered a material breach.

## V. *Was there a breach of contract by the defendant?*

The plaintiff claims that because the defendant sold his pickling cucumbers to Matthew Wells rather than to him that the defendant breached the contract. The defendant on the other hand asserts that he was relieved of performance when the plaintiff materially breached the contract by

not furnishing the variety of seed agreed upon. In light of our determination of the previous issues that the plaintiff had in fact breached the contract first, we find that the defendant had no duty to deliver the pickling cucumbers to the plaintiff.

## VI. *If the defendant breached the contract, would he be liable for damages?*

Plaintiff makes no separate discussion of this issue and the defendant makes proper recognition of the applicability of the statutory provisions of the Uniform Commercial Code as to the measure of damages for nondelivery or repudiation and consequential damages. However, in light of our determination of the preceding issues there has been no testimony submitted upon which to conclude that there was a breach of the contract by the defendant which would be actionable. The court found none and we find none and consequently do not discuss this issue to any further degree.

The trial court was not clearly erroneous in his findings of fact based upon the testimony as we have reviewed it and we do not find any error in his application of the law. GCR 517.1 (1963).

Based upon our analysis of the several issues involved, we affirm the findings and the disposition by the trial court.

All concurred.