ABLE DEMOLITION, INC v CITY OF PONTIAC

Docket No. 273295. Submitted March 14, 2007, at Lansing. Decided May 17, 2007, at 9:05 a.m.

Able Demolition, Inc., brought an action against the city of Pontiac in the Oakland Circuit Court, alleging breach of contract, promissory estoppel, unjust enrichment, and quantum meruit after the city refused to pay Able for buildings Able had demolished without first obtaining letters to proceed, which the contract between Able and the city required. The trial court, Fred M. Mester, J., granted the city's motion for summary disposition, and Able appealed.

The Court of Appeals *held*:

1. The contractual provision that required Able to obtain letters to proceed is a condition precedent, and Able's failure to comply with this clear and unambiguous provision means that it was not entitled to performance by the city in the form of payment for the demolitions at issue.

2. Because the provision requiring a letter to proceed before demolition occurred was a condition precedent intended to minimize the city's legal liability and protect citizens' property rights, Able's failure to obtain the letters constituted a substantial breach of the contract; therefore, despite the fact that Able substantially performed the central purpose of the contract by demolishing the buildings at issue, it may not maintain an action for damages against the city as a matter of law.

Affirmed.

WILDER, J., concurring, agreed with and joined the majority's opinion, except for the part relating to substantial breach.

CONTRACTS — ACTIONS — BREACH OF CONTRACT.

A party who substantially breaches a contract cannot maintain an action for a subsequent breach or failure to perform by the other contracting party.

*Penzien & Associates, PLLC* (by *Charles M. Penzien*), for the plaintiff.

*Bigler, Berry, Johnston, Sztykiel & Hunt, P.C.* (by *Eric S. Goldstein* and *Mary Jo Boerman*), for the defendant.

Before: SMOLENSKI, P.J., and SAAD and WILDER, JJ.

SAAD, J. Able Demolition, Inc., appeals the trial court's grant of summary disposition to the city of Pontiac. For the reasons set forth below, we affirm the trial court's ruling.

### I. FACTS AND PROCEDURAL HISTORY

On July 1, 2004, Able Demolition contracted with Pontiac to tear down certain abandoned homes. As the below-quoted provisions of the contract make clear, Able was required to obtain specific written permission to proceed before demolishing any building:

### IV. SCOPE OF SERVICES

4.01 The Contractor shall diligently perform certain Demolition Services for the City of Pontiac, primarily for the Department of Community Development, as outlined in the attached "Contract Documents." The term "Contract Documents" means and includes the following: 1) Performance Bond; 2) Bid Tally Sheet; 3) Specifications (including any supplemental specifications and special provisions.)

4.02 The demolition services shall be performed over the course of the one (1) year contract, and shall include, but not be limited to, work as specified on the Purchase Order attached hereto, incorporated hereto marked as Exhibit "A" regarding _____,

(address of building)

4.03 The Contractor is an independent contractor and shall not be subject to the specific direction or supervisions of any representative of the City, except in regard to the determination of the acceptability of the Contractor's work

product by the Director of the Community Development Department and the Mayor of the City of Pontiac, and in regard to the mandatory requirements that the Contractor get pre-demolition authorization ("Letter to Proceed" described below) from the Director of Law or their designees prior to performance and/or demolition.

\* \* \*

### V. PRE-DEMOLITION APPROVAL

5.01 **Prior to any performance of services** by the Contractor under the terms of this contract and pursuant to a successful bid, the Contractor must, on the date that the anticipated services will be performed (mandatory), contact the Director of Law or their designee to secure written approval to proceed with said services. Upon request for approval by the Contractor, the Director of Law or their designee will provide said Contractor with a "Letter to Proceed" which will specifically grant the Contractor written approval to proceed with said specified services. Prior to any payment under the terms of this contract (Section VI. Compensation), the Contractor must present the "Letter to Proceed" (Director of Law's—City Attorney's approval documentation) to the Director of Finance of the City verifying that approval to proceed was granted. If the Contractor proceeds without the approval specifically granted in the "Letter to Proceed", the Contractor shall forfeit any payment for unauthorized services performed as a result of his failure to get said pre-approval "Letter to Proceed".

\* \* \*

### VII. COMPENSATION

7.01 The City agrees to pay the Contractor for the Demolition Services performed pursuant to Paragraph 4.02 in the amount of ___ **Thousand** ___ **Hundred and** ___/**100** Dollars ($ ____.___), itemization required), not to exceed a maximum of **One Hundred Thousand and**

**00/100** Dollars **($100,000.00)** for the entire one (1) year contract. If the "Letter to Proceed" for each demolished property is not provided, the Contractor forfeits any payment under the terms of this contract.

\* \* \*

**VIII. METHOD OF PAYMENT**

8.01 Contractor shall submit monthly "Itemization Statements" for services along with the "Letters to Proceed" in accordance with the provisions of this Contract. The original of said "Itemization Statement and "letters [sic] to Proceed" must be sent to the Director of the Community Development Department. Copies must also be provided to the Finance Director and to the Director of Law and the City of Pontiac.

Able maintains that it demolished numerous buildings under the contract, but that Pontiac refused to pay $42,299 for 11 of the demolitions that Able completed. Able filed a complaint against Pontiac on May 10, 2006, and alleged claims of breach of contract, promissory estoppel, unjust enrichment, and quantum meruit.

In lieu of an answer, Pontiac filed a motion for summary disposition under MCR 2.116(C)(10), and argued that Able is not entitled to payment because it did not comply with the material terms of the contract. Specifically, Pontiac asserted that Able failed to obtain letters to proceed as required by § 5.01 for 11 of the houses it demolished and that, therefore, Able forfeited its right to payment for those demolitions. In response, Able asserted that it substantially performed under the contract and it did not materially breach the agreement when it failed to obtain letters to proceed. Following oral argument, the trial court ruled that the contract language clearly and explicitly states that a letter to proceed is required before Able performs a demolition

and before Able is entitled to payment. For that reason, the trial court granted summary disposition to Pontiac.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court explained in *Hamade v Sunoco Inc (R&M)*, 271 Mich App 145, 165-166; 721 NW2d 233 (2006):

> This Court ... reviews de novo the proper interpretation of a contract. *Clark v DaimlerChrysler Corp,* 268 Mich App 138, 141; 706 NW2d 471 (2005). Likewise, whether a contract's terms are ambiguous is a question of law this Court reviews de novo. *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 47; 664 NW2d 776 (2003). When a contract is unambiguous, it must be enforced according to its terms. *DaimlerChrysler Corp v G-Tech Professional Staffing, Inc,* 260 Mich App 183, 185; 678 NW2d 647 (2003).[1]

### B. CONTRACT INTERPRETATION

Section 5.01 of Able's contract with Pontiac unambiguously requires that, on the day of each demolition,

---

[1] The trial court granted summary disposition to Pontiac under MCR 2.116(C)(10). "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). As the *Maiden* Court further explained:

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co,* 451 Mich 358; 547 NW2d 314 (1996). [*Maiden, supra* at 120.]

Able must obtain written assurance from Pontiac's director of law before Able may go forward with the destruction of a building. Sections 5.01, 7.01, and 8.01 also plainly state that, to be paid, Able must submit the letters to proceed to the city and various city representatives. The contract also provides that, if a contractor fails to submit the letters, the company forfeits its right to payment.

As our Supreme Court explained in *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003):

> In interpreting a contract, our obligation is to determine the intent of the contracting parties. *Sobczak v Kotwicki*, 347 Mich 242, 249; 79 NW2d 471 (1956). If the language of the contract is unambiguous, we construe and enforce the contract as written. *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 570; 596 NW2d 915 (1999). Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law. Once discerned, the intent of the parties will be enforced unless it is contrary to public policy. *Id.*

Here, the language of the contract is clear: the contractor, Able Demolition, *must* obtain a letter to proceed from the city's legal department before it can proceed.[2]

_____

[2] For the first time on appeal, Able avers that the contract language is ambiguous. Able did not assert in the trial court that the contract is unclear and, therefore, this issue is not preserved for appeal. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Nonetheless, Able's claim lacks merit. Section 5.01 provides that, if the demolition contractor fails to obtain a letter to proceed, it forfeits "any payment for unauthorized services." Able contends that the phrase "unauthorized services" is ambiguous because, with further discovery, Able may be able to show that Pontiac officials authorized the demolitions and, therefore, the demolitions would not amount to an "unauthorized" service under the contract. First, that other officials may have "authorized" Able to demolish certain buildings does not render the contract language ambiguous. Further, the remainder of the section states that the failure to

The question here is what is the legal consequence of the contractor's failure to comply with this unambiguous contractual obligation.

## C. CONDITION PRECEDENT[3]

Because the contractual language is clear, we need not interpret this contract. Instead, we address the question of the legal consequences of plaintiff's failure to comply with its straightforward obligation. We hold that the contract provision that required Able to obtain letters to proceed is a condition precedent and that Able's failure to comply with this provision means that it was not entitled to performance by Pontiac, i.e., payment for demolition services. A condition precedent " 'is a fact or event that the parties intend must take place before there is a right to performance.' " *Mikonczyk v Detroit Newspapers, Inc*, 238 Mich App 347, 350; 605 NW2d 360 (1999), quoting *Reed v Citizens Ins Co of America*, 198 Mich App 443, 447; 499 NW2d 22 (1993). "Failure to satisfy a condition precedent prevents a cause of action for failure of performance." *Berkel & Co Contractors v Christman Co*, 210 Mich App 416, 420; 533 NW2d 838 (1995).

---

obtain letters to proceed constitutes a forfeiture of payment "for unauthorized services performed as a result of his failure to get said preapproval 'Letter to Proceed.' " A plain reading of the section compels the conclusion that "unauthorized services" refers directly to the failure to obtain letters to proceed. Accordingly, that Able may have obtained permission from another source does not render the contract ambiguous and does not excuse performance under the terms specified in the agreement.

[3] The Restatement of Contracts now refers to a "condition precedent" simply as a "condition." Restatement Contracts, 2d, § 224, comment e, p 163. Here, we use the term "condition precedent" because it most aptly describes the precondition at issue and because our courts have continued to use the term since the Restatement's change.

" 'Courts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language in the contract.' " *Mikonczyk, supra* at 350, quoting *Reed, supra* at 447. The clear and unambiguous language of the disputed provision compels the conclusion that the parties intended that Able must obtain a letter to proceed before each demolition, in order to trigger its right to payment. Section 4.03 of the contract states that "prior to performance and/or demolition," Able must "get pre-demolition authorization," and § 5.03 specifies that "**Prior to any performance of services** . . . [Able] <u>must</u>, on the date that the anticipated services will be performed (mandatory), contact the Director of Law or their designees to secure *written approval* to proceed with said services." (First and second emphasis in original; third emphasis added.) Moreover, § 7.01 unequivocally states that "[i]f the 'Letter to Proceed' for each demolished property is not provided, [Able] forfeits any payment under the terms of this contract." Again, the contract repeatedly states that Able's right to payment is contingent on its acquiring and submitting the letters, and this did not occur. In other words, the contractual language unambiguously sets forth the condition, clarifies its importance, and states the consequences of a failure to comply with the condition. Able acknowledges that it failed to obtain the letters, and, because of this failure, Pontiac is not obligated to perform under the contract. Accordingly, the trial court correctly granted summary disposition to Pontiac.

### D. SUBSTANTIAL BREACH

Were we to conclude that the "letter to proceed" provision constitutes a duty or a promise rather than a condition precedent, Able would not be entitled to

recover under the contract. Again, Able concedes that it failed to comply with the terms of the agreement when it failed to obtain preapproval letters before it demolished the buildings for which it now seeks compensation. " 'The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform.' " *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994), quoting *Flamm v Scherer*, 40 Mich App 1, 8-9; 198 NW2d 702 (1972). However, the rule only applies if the initial breach was substantial. *Id*. To determine whether a substantial breach occurred, a trial court considers "whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Holtzlander v Brownell*, 182 Mich App 716, 722; 453 NW2d 295 (1990). Able maintains that it demolished buildings, which was the central purpose of the agreement, and that, therefore, its failure to obtain and submit the preapproval letters should not excuse Pontiac's obligation to pay for its services.

We disagree with Able's assertion for several reasons. Though the contract contemplated that Able would perform demolition services for the city, the contract here is more than a mere services contract. Rather, the contract is a "legal protocol," and, as such, the critical aspect of the agreement is that any demolition be accomplished in strict compliance with the procedures designated by Pontiac's legal department to minimize the risk of legal liability and the serious violation of citizens' property rights. A demolition company must ask the city for a letter on the day of each demolition because, in some cases, a property owner may obtain a last-minute temporary restraining order to prevent destruction of a building. Clearly, the city insists on the clause to avoid liability for demolitions that should not,

legally, go forward. This intent is clear because the contract language makes the letter to proceed mandatory on the date the demolition is performed, and this preapproval letter must be issued by the city's director of law. Because this step is in the contract to protect property rights and to protect the city from exposure to liability, the letter-to-proceed provision is an essential term of the contract and not a mere technicality. Indeed, the term goes to the heart of the agreement and reflects that the parties understood that the underlying action—the demolition of property—carries with it serious legal implications for all parties. If the parties were not bound by this term, the legal safeguards set forth in the agreement would be rendered meaningless. Thus, we hold that Able's breach was substantial and that Able may not maintain an action for damages against Pontiac as a matter of law.[4]

Affirmed.

SMOLENSKI, J., concurred.

WILDER, J. *(concurring)*. I agree with and join in parts I and II(A), (B), and (C) of the majority opinion.

---

[4] To the extent Able continues to maintain its unjust enrichment, quantum meruit, and promissory estoppel claims, we affirm their dismissal. A claim of unjust enrichment does not apply if there is an express contract, *Martin v East Lansing School Dist*, 193 Mich App 166, 177; 483 NW2d 656 (1992), and the same is true for a quantum meruit claim. *Dykema Gossett PLLC v Ajluni*, 273 Mich App 1, 8-9; 730 NW2d 29 (2006). Furthermore, the contract contains an integration clause; therefore, it would have been unreasonable as a matter of law for Able to rely on any outside representations to support a promissory estoppel claim. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 504; 579 NW2d 411 (1998).