*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAWTHAR SAAD

Plaintiff-Appellant,

and

ONE STEP REHAB LLC,

Intervening Plaintiff,

v

WESTFIELD INSURANCE COMPANY,

Defendant-Appellee,

and

YOUSSEF LAKKIS,

Defendant.

UNPUBLISHED
April 22, 2021

No. 350557
Macomb Circuit Court
LC No. 2018-002766-NI

Before: TUKEL, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

In this no-fault action, plaintiff, Kawthar Saad, appeals as of right the trial court's order granting summary disposition to defendant, Westfield Insurance Company.[1] The trial court granted summary disposition to defendant because it concluded that plaintiff committed fraud that invalidated her insurance contract with defendant. Since that time, however, the law has changed significantly. Now, in instances of alleged fraud that occurred after the parties entered into the insurance contract, such as here, the insurance contract is invalidated only if the fraud amounts to a substantial breach of the insurance contract. Plaintiff's alleged fraud occurred after the parties

---

[1] Intervening plaintiff One Step Rehab and defendant Youssef Lakkis are not parties on appeal. Consequently, all references to "plaintiff" and "defendant" in this opinion refer to Saad and Westfield respectively.

entered into the insurance contract and did not amount to a substantial breach of the insurance contract. As such, plaintiff's alleged fraud cannot be used to invalidate the insurance contract. Consequently, we reverse the trial court's order granting summary disposition to defendant and remand for proceedings consistent with this opinion.

## I. UNDERLYING FACTS

Plaintiff had a no-fault insurance policy with defendant when she was involved in a car accident in August 2017. This policy contained a general anti-fraud clause, providing, in relevant part:

> c. We may void this policy or deny coverage for an accident or loss if you or an **insured** have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation of a settlement or claim.
>
> * * *
>
> f. No person who engages in fraudulent conduct shall be entitled to receive payment under this policy.

Plaintiff required medical care as a result of the accident, but defendant denied plaintiff's claim for personal protection insurance (PIP) benefits. This, in turn, caused plaintiff to sue defendant for those PIP benefits. Plaintiff was deposed during the course of litigation. During her deposition, plaintiff testified that she was unable to drive from the time of her accident in August 2017 until about March 2018. After the deposition, defendant produced surveillance footage, taken before litigation began, of plaintiff driving on two separate occasions in November 2017. Citing this footage, defendant moved for summary disposition under MCR 2.116(10). Defendant argued that, on the basis of the footage of plaintiff driving, there was no dispute of material fact that plaintiff had lied when she testified that as of November 2017, she was unable to drive. Accordingly, defendant argued that plaintiff's claim for PIP benefits was barred by the insurance policy's antifraud clause. Plaintiff disagreed and argued that there was a dispute of material fact as to whether, in her deposition, plaintiff had misrepresented her ability to drive.

Following a hearing on the matter, the trial court agreed with defendant and granted summary disposition to it. Specifically, the trial court concluded that there was no genuine dispute of material fact that plaintiff had misrepresented her ability to drive in the deposition:

> All right. I'm going to have to say, I think the – whether or not seeing the video, the video did seem to be pretty well-supported anyhow, but I think there's sufficient – I don't think it's a question of fact. She says she can't drive. She's clearly driving. It appears there was no issue with it. She didn't appear to be hobbling, limping, falling over, needing support, needing a cane, needing a walker or anything of the sort.
>
> I'm granting summary disposition [to defendant].

This appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). Additionally, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## III. ANALYSIS

When the trial court granted summary disposition to defendant, it did so based on *Bahri v IDS Property Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014). In *Bahri*, this Court stated the requirements for proving fraud in an insurance claim as follows:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Id.* at 424-425 (citation omitted).]

But the circumstances under which an insurer may invalidate an insurance contract based on fraud has significantly changed in recent months, starting with this Court's opinion in *Haydaw v Farm Bureau Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345516). *Haydaw*, and the line of cases that followed it, have provided greater clarity regarding the use of fraud as a defense to an insurance claim. These cases addressed two issues: (1) whether fraud discovered during the course of litigation can be used to void an insurance contract, and (2) the significance of whether the fraud occurred before or after the parties entered into the insurance contract.

## A. FRAUD DISCOVERED DURING THE COURSE OF LITIGATION

In *Haydaw*, ___ Mich App at ___; slip op at 5, this Court held that "[f]alse statements made during discovery do not provide grounds to void [an insurance] policy because, by that time, the claim has been denied and the parties are adversaries in litigation." The *Haydaw* Court

characterized an assertion of fraud discovered during the course of litigation as "essentially seeking dismissal . . . on the basis of alleged discovery misconduct." *Id*. at ___; slip op at 6. As explained by the *Haydaw* Court,

> it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony. To be clear, once an insurer fails to timely pay a claim and suit is filed, the parties' duties of disclosure are governed by the rules of civil procedure, not the insurance policy. [*Id*.]

Similarly,

> [S]tatements made during litigation are by their nature incapable of satisfying the elements for voiding a policy on the basis of post-loss fraud. In order to obtain that relief under *Bahri*, 308 Mich App at 424-425, the material misrepresentation must have been made with "the intention that the insurer would act upon it." Yet an insured's statements during discovery are made with the intention that the trier of fact, not the insurer, will act on them. To the extent that the insurer acts on those statements, it is through counsel for purposes of litigation strategy rather than processing the claim under the policy's terms. [*Id*. (footnote omitted).]

Consequently, after *Haydaw*, statements made during the course of litigation, such as plaintiff's statements in her deposition, cannot constitute fraud that would void an insurance policy. See *id*.

About two months after *Haydaw* was decided, this Court examined *Haydaw* in *Fashho v Liberty Mutual Ins Co*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 349519). In *Fashho*, this court concluded that *Haydaw*

> [S]tand[s] for the unremarkable proposition that an insurer cannot assert that it denied a claim because of fraud *that occurred after litigation began*; the fraud must have occurred before the legal proceedings. This recognizes the reality that a plaintiff-insured only commences suit after the defendant-insurer denies the plaintiff's claim, and that denial cannot possibly be based on an event that has not yet taken place. This does not mean that a defendant cannot rely on evidence of fraud obtained after litigation commences. It simply means that the evidence must relate to fraud that took place before the proceedings began. [*Id*. at ___; slip op at 4 (emphasis added).]

Consequently, *Fashho* clarified *Haydaw* and established that evidence of fraud obtained during the course of litigation can still be used to void an insurance contract as long as it related to fraud that occurred before litigation began. *Id*. On the other hand, however, if alleged fraud occurred after litigation began then it cannot void an insurance contract. *Id*.

## B. THE IMPORTANCE OF WHEN ALLEGED FRAUD OCCURRED

Less than a month after this Court's decision in *Haydaw*—and before this Court's opinion in *Fashho*—our Supreme Court addressed whether fraud clauses in insurance contracts can ever

be used to invalidate an insurance contract. In *Meemic Ins Co v Fortson*, 506 Mich 287; ___ NW2d ___ (2020) (Docket No. 158302), our Supreme Court concluded that antifraud provisions in insurance contracts "are valid when based on a defense to mandatory coverage provided in the no-fault act[, MCL 500.3101,] itself or on a common-law defense that has not been abrogated by the act." *Id*. at 293. Fraud defenses are not statutory and, therefore, they are only available to insurers to the extent that they arise from the common law and are not abrogated by the no-fault act. *Id*. at 303-305. "At common law, the defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract." *Id*. at 305. Nevertheless, "a postprocurement fraud clause that rescinds a contract would be valid as applied to a party's failure to perform a substantial part of the contract or one of its essential terms. Generally, however, the mere breach of a contract would not entitle the injured party to avoid the contract at common law." *Id*. at 308. Instead, in circumstances in which the misrepresentations do not "constitute[] a failure to perform a substantial part of the contract or an essential term," the insurer may still bring a claim for damages.[2] *Id*. at 310. Consequently, under *Meemic*, rescission is available as a remedy for postprocurement no-fault insurance fraud only if the fraud amounted to a substantial breach of the insurance contract.[3] *Id*. at 307-308. Rescission, however, remains available as a remedy for preprocurement fraud. *Id*.

A few months later, this Court returned to the issue of postprocurement fraud in no-fault cases in *Williams v Farm Bureau Mutual Ins Co of Mich*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 349903). The *Williams* Court examined *Meemic* and considered whether *Bahri* remained good law in light of *Meemic*. The *Williams* Court held that *Bahri*'s fraud test applies only to instances of fraud in the inducement, i.e. preprocurement fraud, not to postprocurement fraud. *Id*. ___; slip op at 6-7 ("We conclude that *Bahri* remains good law only to the extent that it is consistent with the no-fault act and common law as explained in *Meemic*. In

---

[2] Indeed, as explained by this Court in *Williams v Farm Bureau Mutual Ins Co of Mich*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349903); slip op at 5:

> Contrary to defendant's suggestion, limiting no-fault antifraud provisions to fraud in the inducement—as required by *Meemic*—will not leave no-fault insurers without recourse in the event of a fraudulent claim. An insurer maintains the power to deny claims or parts of claims it believes fraudulent. The plaintiff then bears the burden of filing suit and ultimately proving that she was injured in an auto accident and that the injury resulted in reasonable and necessary medical care and other covered expenses.

[3] "To determine whether a substantial breach occurred, a trial court considers whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). Defendant, as the supposed nonbreaching party, expected to receive the benefit of plaintiff's payments pursuant to the insurance contract. No evidence before the trial court established that defendant did not receive this benefit. Thus, plaintiff's alleged fraud did not amount to a substantial breach of the insurance contract. See *id*.

other words, it applies only in cases of fraud in the inducement."). In essence, *Williams* simply clarified *Meemic*'s holding by specifically addressing its effect on *Bahri*. See *id*.[4]

## C. APPLICATION TO THIS CASE

Together, *Haydaw*, *Meemic*, *Fashho*, and *Williams* have resulted in a significant change in law since the time the trial court granted summary disposition to defendant. When taken together, they establish that, unless an insured's fraud results in a substantial breach of the insurance contract, fraud provides a basis for the opposite party to a contract to rescind the contract only if the fraud occurred before the contract was signed and before litigation commenced. See *Meemic*, 506 Mich at 307-308, 310 (addressing the issue of preprocurement fraud compared to postprocurement fraud); *Williams*, ___ Mich App at ___; slip op at 6-7 (applying *Meemic*'s holding to limit *Bahri* to instances of preprocurement fraud); *Fashho*, ___ Mich App at ___; slip op at 4 ("[A]n insurer cannot assert that it denied a claim because of fraud that occurred after litigation began; the fraud must have occurred before the legal proceedings."); *Haydaw*, ___ Mich App at ___; slip op at 6 ("[S]tatements made during litigation are by their nature incapable of satisfying the elements for voiding a policy on the basis of post-loss fraud."). Plaintiff's alleged fraud—that she falsely claimed she was unable to drive herself to medical appointments from August 2017 until about March 2018—occurred after the insurance contract was signed, but before litigation commenced. As such, even if plaintiff's claim was fraudulent, it was postprocurement fraud and thus can only be used to invalidate the insurance contract if it amounted to a substantial breach of the insurance contract, which is not the case here. Consequently, the trial court erred by granting summary disposition to defendant.

---

[4] The fact that the recent cases on which we rely had not been decided at the time the trial court ruled on the motion for summary disposition does not present a significant retroactivity question, given the circumstances. "Typically, our decisions are given retroactive effect, 'applying to pending cases in which a challenge . . . has been raised and preserved.' Prospective application is a departure from this usual rule and is appropriate only in 'exigent circumstances.' " *Devillers v Auto Club Ins. Ass'n*, 473 Mich 562, 586-587; 702 NW2d 539 (2005) (citation omitted). Thus, "[P]rospective-only application of our decisions is generally 'limited to decisions which overrule *clear and uncontradicted* case law.' " *Id*. (citation omitted).

None of the recent cases we discussed overruled any previous decision; at most, they clarified and limited the scope of earlier decisions. We thus have no occasion to deviate from our general rule of full application of judicial decisions to pending cases, such as this one.

## IV.  CONCLUSION

For the reasons stated in this opinion we reverse the trial court's order granting summary disposition to defendant and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Kathleen Jansen
/s/ Thomas C. Cameron