*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DORAID ELDER, NOZMI ELDER, and WEST DEARBORN PARTNERS, LLC,

Plaintiffs-Appellants,

v

SCOTT K. LITES, KURT RIEDEL, MICHAEL ASHCRAFT, and PLUNKETT COONEY, PC,

Defendants-Appellees.

UNPUBLISHED
February 19, 2026
2:25 PM

No. 369709
Wayne Circuit Court
LC No. 21-017445-NM

Before: FEENEY, P.J., and RIORDAN and GARRETT, JJ.

PER CURIAM.

In this legal-malpractice matter, plaintiffs-appellants, Doraid Elder, Nozmi Elder, and West Dearborn Partners, LLC, appeal as of right the trial court order granting summary disposition of plaintiffs' remaining claims in favor of defendants-appellees, Scott K. Lites, Kurt Riedel, Michael Ashcraft, and Plunkett Cooney, PC, under MCR 2.116(C)(7) (claims are time-barred). We affirm.

## I. FACTUAL BACKGROUND

Doraid, Nozmi, and Anmar Sarafa were the original members of West Dearborn Partners until Doraid and Nozmi acquired Sarafa's ownership interest.[1] Lites, Riedel, and Ashcraft are all attorneys, currently or formerly employed by Plunkett Cooney. Ashcraft served as general counsel to Plunkett Cooney. This case arises from an underlying property dispute.

In May 2005, the city of Dearborn sold a vacant parcel of land, "Parcel C," to West Village Commons, LLC. In June 2005, West Village recorded a construction note and mortgage on Parcel C in favor of Standard Federal Bank National Association. Bank of America became the successor to Standard Federal. West Village never developed Parcel C, and in August 2010, West Village filed for bankruptcy. In March 2011, West Dearborn Partners acquired the 2005 Note and

---

[1] Doraid is Nozmi's son.

Mortgage from Bank of America under a Note Sale and Assignment Agreement. Lites was the attorney that worked on this sale—West Dearborn Partners requested that Lites record the assignment with the register of deeds at that time, but he failed to do so.

On October 5, 2011, in the West Village bankruptcy proceedings, the bankruptcy court directed the trustee to abandon Parcel C to the city of Dearborn. The trustee executed a quit claim deed conveying Parcel C to Dearborn on October 17, 2011. It was not until December 17, 2015, that Lites recorded the 2011 assignment with the register of deeds on behalf of West Dearborn Partners. In separate litigation in Wayne Circuit Court, the city of Dearborn sought to quiet title against Bank of America, which resulted in a previous appeal before this Court. See *Dearborn v Bank of America*, unpublished per curiam opinion of the Court of Appeals, issued February 12, 2019 (Docket No. 339704). Both the trial court and this Court rejected the view that West Dearborn Partners' interest in Parcel C was preserved and instead ruled that the failure to record the Assignment before October 5, 2011, extinguished any interest West Dearborn Partners had in Parcel C. *Id*. at 4, 8. Defendants sought leave to appeal in the Michigan Supreme Court on plaintiffs' behalf, which was denied, *Dearborn v Bank of America*, 506 Mich 936 (2020), as was a motion for reconsideration, *Dearborn v Bank of America*, 506 Mich 974 (2020).

In December 2017, the parties entered a tolling agreement to extend the statute of limitations regarding any possible claims of legal malpractice until such time that defendants exhausted any appellate remedies while maintaining an attorney-client relationship with plaintiffs. The tolling agreement provided:

> Nothing contained in this Agreement shall be deemed to renew, revive, or resurrect any claim on behalf of West Dearborn Partners which, on December 1, 2017, was already time-barred by statute, court rule, or case law[.]

## II. PROCEDURAL HISTORY

Plaintiffs filed this suit on December 21, 2021. In Count I, plaintiffs alleged legal malpractice and professional negligence against Lites for, among other things, Lites's failure to: (1) record the assignment, (2) inform plaintiffs of the failure to record the assignment, and (3) take legal action against Bank of America. Plaintiffs claimed they suffered damages by way of "the value of uncollected mortgage interest, the value of real property, and [the] value of development opportunity losses exceeding [$30 million.]" In Count II, plaintiffs alleged professional liability against Plunkett Cooney, Lites, and Riedel for the same acts, namely, failing to record the assignment and failing to advise plaintiffs of that failure.

In Count III, plaintiffs alleged breach of fiduciary duty by Lites. Plaintiffs asserted that at all times, defendants were engaged in the practice of their profession, and "[t]he attorney-client relationship gives rise to fiduciary duties and responsibilities, in addition[] to professional obligations as an advocate." Plaintiffs then stated that a breach of fiduciary duty is distinct from professional negligence; a breach of fiduciary duty imposes a higher expectation than negligence, "arises from the attorney-client relationship," and requires a more culpable state of mind. Plaintiffs claimed that Lites breached his fiduciary duty by not explaining his failure to record the assignment "and related false explanations in his effort to avoid full disclosure to his clients," giving false deposition testimony, withholding information about conflicts of interests, and refusing to act

-2-

adversely against Bank of America. In Count IV, plaintiffs alleged breach of fiduciary duty against Plunkett Cooney, Ashcraft, "and other Plunkett Cooney employees and agents" for not acknowledging the failure to record the assignment, withholding conflicts of interest, requesting that plaintiffs release any claims, failing to disclose information, and lack of candor.

Several motions for summary disposition were filed. The court granted Riedel summary disposition of the legal-malpractice claim against him because he had retired and the statute of limitations had run. Plaintiffs moved for summary disposition of their legal-malpractice claims, and in lieu of filing a response, a stipulated order was entered. The parties stipulated to two elements of the legal-malpractice claims: that an attorney-client relationship existed between Plunkett Cooney and West Dearborn Partners for the purpose of recording the assignment, and that the representation by Plunkett Cooney was negligent for failing to record the assignment before October 5, 2011. After defendants moved for summary disposition a second time, the court dismissed all claims brought by Nozmi individually, and dismissed Count IV, the fiduciary-duty claim against Plunkett Cooney and Ashcraft, as frivolous.

Thereafter, defendants moved for summary disposition of Count I, legal malpractice against Lites; Count II, legal malpractice against Plunkett Cooney and Lites; and Count III, breach of fiduciary duty against Lites. Defendants argued that they were entitled to summary disposition of these claims because: (1) they were time-barred; (2) even if they were timely, plaintiffs could not establish damages; and (3) there was no genuine issue of material fact precluding summary disposition of the legal-malpractice or fiduciary-duty claims.

The trial court held that although plaintiffs' legal-malpractice claims were filed within the two-year period provided under MCL 600.5805(8), they were nonetheless time-barred by the statute of repose, MCL 600.5838b,[2] because the act of legal malpractice was the failure to record the assignment in 2011, and plaintiffs did not file suit until December 2020, outside the six-year statute of repose period. Next, the trial court concluded that plaintiffs' claim for breach of fiduciary duty against Lites was subsumed by plaintiffs' claim for legal malpractice, and as such, it was also time-barred by the statute of repose. The court further concluded that there was no genuine issue of material fact that plaintiffs did not suffer damages from defendants' representation in the bankruptcy or quiet title actions because there was no evidence that plaintiffs would have been successful in either action but for defendants' negligent representation. Lastly, the court

---

[2] MCL 600.5838b provides in relevant part as follows:

(1) An action for legal malpractice against an attorney-at-law or a law firm shall not be commenced after whichever of the following is earlier:

(a) The expiration of the applicable period of limitations under this chapter.

(b) Six years after the date of the act or omission that is the basis for the claim.

(2) A legal malpractice action that is not commenced within the time prescribed by subsection (1) is barred.

determined that Lites was entitled to summary disposition of the legal-malpractice claims arising from the bankruptcy and quiet title proceedings because other Plunkett Cooney attorneys handled those matters.

Plaintiffs moved for reconsideration of the trial court's order, which the trial court denied. Plaintiffs now appeal, only challenging the trial court's dismissal of the fiduciary-duty claim against Lites.

## III. BREACH OF FIDUCIARY DUTY

The trial court did not err in its determination that plaintiffs' claim for breach of fiduciary duty against Lites was subsumed by plaintiffs' claim for legal malpractice against Lites, and therefore, the breach-of-fiduciary-duty claim was time-barred by the statute of repose.

## A. PRESERVATION AND STANDARDS OF REVIEW

Generally, an issue is preserved for appellate review if it is raised in the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). In this case, plaintiffs argued that defendants' failure to report their malpractice—i.e., their failure to record the assignment before October 5, 2011—constituted a breach of fiduciary duty. Meanwhile, defendants argued that plaintiffs' breach-of-fiduciary-duty claims were subsumed by their legal-malpractice claims." Therefore, these issues are preserved for appellate review. See *id*.

A trial court's decision on a motion for summary disposition is reviewed de novo, *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019), as is whether a cause of action is barred by a statute of limitations, *Collins v Comerica Bank*, 468 Mich 628, 631; 664 NW2d 713 (2003). The trial court granted defendants' third motion for summary disposition under MCR 2.116(C)(7), which allows summary disposition when a claim is barred by the statute of limitations. *Armijo v Bronson Methodist Hosp*, 345 Mich App 254, 262; 4 NW3d 789 (2023).

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

To the extent this issue involves interpretation of a contract, i.e., the tolling agreement, we review de novo the proper interpretation of a contract and whether the contract's terms are ambiguous. *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 581; 739 NW2d 696 (2007). "When a contract is unambiguous, it must be enforced according to its terms." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

The elements of a legal-malpractice claim are: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004). When a plaintiff alleges multiple causes of action arising from an attorney-client relationship, a court must examine the type of interest allegedly harmed. "[C]laims against attorneys brought on the basis of inadequate representation sound in tort and are governed by the malpractice statute of limitations . . . ." *Aldred v O'Hara-Bruce*, 184 Mich App 488, 490; 458 NW2d 671 (1990). But when a claim involves harm to an interest which differs from a breach of the standard of care, that claim is not subsumed by a malpractice claim. See *Brownell v Garber*, 199 Mich App 519, 532; 503 NW2d 81 (1993).

"A fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 49; 698 NW2d 900 (2005) (quotation marks and citation omitted). To establish a breach of fiduciary duty, the plaintiff must prove: "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020). An attorney owes a fiduciary duty to both current and former clients. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 599-600, 603; 792 NW2d 344 (2010). Breach-of-fiduciary-duty claims are not automatically duplicative of legal-malpractice claims. *Prentis Family Foundation*, 266 Mich App at 47. A claim for breach of fiduciary duty differs from a claim for legal malpractice by requiring proof of conduct committed with "a more culpable state of mind than the negligence required for malpractice." *Id*. Additionally, "[d]amages may be obtained for a breach of fiduciary duty when a position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Id*. (quotation marks and citation omitted).

To determine whether a claim is duplicative in a legal-malpractice action, the complaint must be read as a whole to determine the type of interest allegedly harmed and how the claim occurred. *Aldred*, 184 Mich App at 490. Where a plaintiff alleges negligent legal representation, the claim is legal malpractice. *Id*. at 490-491. But when the interest involved in a claim for damages is different from the interest involved in legal malpractice, there may be separate claims. *Brownell*, 199 Mich App at 532. The claim for breach of fiduciary duty must be viewed in the context of the entire complaint to ascertain the gravamen of the action. *Aldred*, 184 Mich App at 490-491.

In Count I, professional liability against Lites, plaintiffs alleged the following:

> 61. At all times pertinent hereto, the Defendants were engaged in the practice of their profession, and held themselves out to the public and in particular to Plaintiffs as skilled and competent attorneys, capable of properly and skillfully representing, advising, counseling and consulting with individuals seeking their services.

> 62. The Defendants owed Plaintiffs the duty to possess that reasonable degree of learning and skill that is ordinarily possessed by attorneys in similar

situations, licensed in the State of Michigan and to use reasonable care and diligence in the exercise of the skill and application of their learning to the representation, advice, counseling and consulting with individuals seeking their services in accordance with the standard prevailing amongst attorneys in the State of Michigan.

Plaintiffs then alleged that defendants were guilty of professional negligence for failing to promptly record the 2011 assignment, failing to inform plaintiffs of the failure to record the assignment, failing to take legal action in the bankruptcy and quiet title actions, and testifying at depositions contrary to fact.

In Count III, breach of fiduciary duty against Lites, plaintiffs repeated paragraphs 60 and 61 verbatim with an additional sentence at the end of the first paragraph: "The attorney-client relationship gives rise to fiduciary duties and responsibilities, in addition[] to professional obligations as an advocate." Plaintiffs stated that fiduciary duty is distinct from professional negligence, requiring amore culpable state of mind. Plaintiffs then alleged that Lites breached these duties by: failing to explain his deficiencies in recording the assignment and giving false explanations to avoid full disclosure, giving false deposition testimony, withholding information about conflicts of interests, and failing to take legal action against Bank of America.

The trial court did not err by concluding that plaintiffs' claim for breach of fiduciary duty was subsumed by their claim for legal malpractice. The complaint included repeated allegations between Counts I and III, or very similar allegations slightly reworded. For example, plaintiffs alleged legal malpractice based on the "[f]ailure to properly advise and correctly inform Plaintiffs" regarding the assignment and failure to record the assignment, and the failure to take legal action against Bank of America. And plaintiffs similarly alleged breach of fiduciary duty based on Lites's failure to disclose the lack of recording "and related false explanations in his effort to avoid full disclosure to his clients," withholding potential conflict of interest information, and not taking legal action against Bank of America.

Although one set of facts may give rise to more than one cause of action, *Freiburger v Mich Dep't of Mental Health*, 161 Mich App 316, 319-320; 409 NW2d 821 (1987), plaintiffs failed to plead the distinguishing factor between a claim for legal malpractice and a claim for breach of fiduciary duty—"a more culpable state of mind than the negligence required for malpractice," *Prentis Family Foundation*, 266 Mich App at 47. Plaintiffs failed to plead anything more than inadequate representation, and relied on the same conduct by Lites that gave rise to the legal-malpractice claim. Although Count III (breach of fiduciary duty against Lites) specifically took issue with Lites' ongoing communications regarding the failure to disclose and its effect on plaintiffs, plaintiffs did not allege that Lites breached any duty arising outside the attorney-client relationship. Rather, without the attorney-client relationship, Lites would have no duty to disclose the failure to record the assignment, which is the underlying issue of both counts. Therefore, considering the gravamen of plaintiffs' suit based on a reading of the complaint as a whole, *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007), the trial court properly determined that plaintiffs' claim against Lites for breach of fiduciary duty was subsumed by plaintiffs' claim against Lites for legal malpractice.

Plaintiffs argue that Lites's duty to self-report arises from the Michigan Rules of Professional Conduct, citing MRPC 1.4 and MRPC 1.7. "[T]o the extent that any valid common law claim may happen to find a corollary in the MRPC, the rules of professional conduct do not eliminate or render invalid a fiduciary duty claim." *Alpha Capital Mgt, Inc*, 287 Mich App at 630 (quotation marks omitted). But plaintiffs' reliance on the rules of professional conduct further enforces the conclusion that plaintiffs' fiduciary-duty claim is subsumed by their claim of legal malpractice, and they failed to establish a breach of a separate and distinct legal duty. Moreover, neither rule stands for the proposition plaintiffs say it does, i.e., that an attorney has a duty to self-report malpractice. Rule 1.4 requires an attorney to "keep a client reasonably informed about the status of a matter and comply promptly with reasonable requests for information" and to notify a client promptly of settlement offers, case evaluations, and plea bargains. MRPC 1.4(a). This rule also requires an attorney to explain a matter to the client to the extent reasonably necessary for the client to make informed decisions. MRPC 1.4(b). Rule 1.7 prohibits attorneys from representing a client where a conflict of interest exists. MRPC 1.7. Therefore, neither rule, nor any alleged violation of either rule, supports plaintiffs' contention that their breach-of-fiduciary-duty claim against Lites is separate and distinct from their legal-malpractice claim.

Because the fiduciary-duty claim was subsumed by the legal-malpractice claim, the trial court properly granted defendants summary disposition of this count under MCR 2.116(C)(7) as it was time-barred by the statute of repose. A legal-malpractice action must be filed within two years of the date that the claim accrues. MCL 600.5805(8); *Wright v Rinaldo*, 279 Mich App 526, 528-529; 761 NW2d 114 (2008). The claim accrues on the date that the attorney discontinues serving the client in the matter where the claim arose. MCL 600.5838(1); *Wright*, 279 Mich App at 528-529. Defendants' representation of plaintiffs ended on December 4, 2020, when the Michigan Supreme Court denied reconsideration of its denial for leave to appeal. *Dearborn*, 506 Mich at 974. Plaintiffs' complaint, filed in December 2021, fell within the two-year period.

But claims for legal malpractice are also limited by the statute of repose, MCL 600.5838b, which provides, in relevant part as follows:

> (1) An action for legal malpractice against an attorney-at-law or a law firm shall not be commenced after whichever of the following is earlier:
>
> (a) The expiration of the applicable period of limitations under this chapter.
>
> (b) Six years after the date of the act or omission that is the basis for the claim.
>
> (2) A legal malpractice action that is not commenced within the time prescribed by subsection (1) is barred.

"A statute of repose prevents a cause of action from ever accruing when the injury is sustained after the designated statutory period has elapsed. A statute of limitation, however, prescribes the time limits in which a party may bring an action that has already accrued." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 308; 559 NW2d 348 (1996) (citation omitted).

-7-

The crux of plaintiffs' argument is that Lites committed malpractice by failing to timely record the assignment. Plaintiffs' interest in Parcel C was extinguished by the bankruptcy court order entered October 5, 2011. Therefore, under the statute of repose, plaintiffs had until October 5, 2017, to file their legal-malpractice claim for failure to record the assignment. See MCL 600.5838b(1)(b). Because the complaint was not filed until December 2020, the claim was time-barred. And because plaintiffs' breach-of-fiduciary-duty claim was subsumed by their legal-malpractice claim, it too was untimely under MCL 600.5838b.[3] Therefore, defendants were properly granted summary disposition of plaintiffs' breach-of-fiduciary-duty claim under MCR 2.116(C)(7).[4]

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett

---

[3] Because plaintiffs' time-barred claim was not filed by October 5, 2017, it was not revived by the tolling agreement dated December 1, 2017. The clear and unambiguous language of the tolling agreement provided that it did not renew, revive, or resurrect any claim which was already time-barred by statute, court rule, or caselaw by the date the agreement was entered.

[4] This conclusion renders defendants' alternative grounds to affirm raised in their brief on appeal moot and further discussion is unnecessary. See *Adams v Parole Bd*, 340 Mich App 251, 259; 985 NW2d 881 (2022) (providing that an issue is moot when a judgment or event occurs rendering it impossible for the court to grant relief or when a judgment entered cannot have any practical legal effect on the existing controversy, and that this Court generally does not decide moot issues).