*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROYAL PETRO, LLC, and ROYAL FT PETRO, LLC,

        Plaintiffs-Appellees,

v

MAKKI INVESTMENT, LLC, and MOHAMAD MAKKI,

        Defendants-Appellants.

UNPUBLISHED
August 12, 2021

No. 352320
Oakland Circuit Court
LC No. 2018-170108-CB

Before: SAWYER, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Defendants appeal as of right the January 10, 2020 judgment entered by the trial court, following a bench trial. The court determined that defendant Makki Investment, LLC, was liable for breach of contract. Plaintiffs were permitted to pierce the corporate veil to also hold defendant Mohamad Makki personally liable for the judgment. The trial court awarded plaintiffs compensatory damages of $101,000. After defendants filed their claim of appeal on January 21, 2020, the trial court held a hearing on June 2, 2020, on plaintiffs' motion for attorney fees and costs. Thereafter, in orders dated June 15 and 17, 2020,[1] the court awarded plaintiffs attorney fees and costs of $41,110.66, and ordered that the January 10, 2020 judgment be amended to show this additional amount.[2] We affirm the trial court's judgment and decline to consider defendants' substantive challenge to the June 15, 2020 attorney-fee order for lack of jurisdiction.

---

[1] The June 17 order corrected a clerical error in the June 15 order regarding the total amount of the judgment.

[2] We reject plaintiffs' argument that this Court lacks jurisdiction over this appeal because the January 10, 2020 judgment from which defendants timely filed their claim of appeal was not a final order, and instead, it was the June 15 order awarding attorney fees and costs that constituted the final order in this case. The January 10, 2020 judgment was the final order under

This action arises from a June 13, 2018 purchase agreement whereby defendant Makki Investment, LLC (Makki Investment), acting through its sole member and shareholder, defendant Mohamad Makki, agreed to sell two parcels of real property and business assets to plaintiffs for $850,000. One of the parcels contained a gas station and convenience store. Plaintiffs paid a security deposit of $15,000 and a closing date was scheduled for September 15, 2018. However, on August 6, 2018, defendants advised plaintiffs that they were terminating the agreement, without providing any reason for doing so. Plaintiffs later learned that Makki found another buyer for the properties, which were sold for $75,000 more than plaintiffs had agreed to pay.

Plaintiffs brought this action for breach of contract against Makki Investment. They also alleged that they should be permitted to pierce the corporate veil to hold Makki personally liable because Makki was the sole member of Makki Investment. Defendant was also the manager of Makki Investment and he used Makki Investment's limited liability to commit a wrong or fraud against plaintiffs. The trial court granted partial summary disposition for plaintiffs on the issue of whether Makki Investment breached the purchase agreement, but held that there was a question of fact whether the breach involved a termination or a default under the terms of the contract, which would affect what damages plaintiffs could recover.

Following a one-day bench trial, the trial court found that Makki Investment terminated the agreement without cause. The trial court awarded plaintiffs damages of $101,000, consisting of $75,000 for the difference between the parties' contract price (and the amount defendants received from selling the properties to another buyer), plaintiffs' original $15,000 security deposit, $5,000 in legal fees incurred by plaintiffs in anticipation of completing the purchase transaction, and $6,000 in bank charges incurred by plaintiffs to obtain financing for the purchase.

## I. BREACH OF CONTRACT

Defendants argue that the trial court erred by finding Makki Investment liable for breach of contract despite that plaintiffs failed to perform all conditions precedent to Makki Investment's performance obligation under the purchase agreement. We disagree.

As explained in *Patel v Patel*, 324 Mich App 631, 633; 922 NW2d 647 (2018):

> This Court reviews for clear error the trial court's factual findings following a bench trial and reviews de novo the trial court's conclusions of law. A finding is

---

MCR 7.202(6)(a)(i) because it was the first order that disposed of all of the parties' claims. The June 15, 2020 order awarding attorney fees qualifies as a postjudgment order. However, as explained later in this opinion, this Court lacks jurisdiction to consider defendants' challenge to the June 15, 2020 attorney-fee order, because that order separately qualifies as a final order under MCR 7.202(6)(a)(iv) and defendants did not file a separate claim of appeal from that order. Moreover, defendants previously filed a motion to amend their January 21, 2020 claim of appeal to "include and encompass the trial court's June 15, 2020 Order, . . . and to raise any and all issues relating to the impropriety of [that] order," but this Court denied the motion. *Royal Petro, LLC v Makki Investment Co*, unpublished order of the Court of Appeals, entered July 14, 2020 (Docket No. 352320).

clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made. On appellate review, this Court must afford deference to the trial court's superior ability to judge the credibility of the witnesses who appear before it. [Cleaned up.]

Preliminarily, although plaintiffs argue that defendants did not properly plead or raise as an affirmative defense that plaintiffs failed to satisfy all conditions precedent, this issue was raised at trial without objection by plaintiffs. It was addressed and decided by the trial court. Therefore, we reject plaintiffs' argument that defendants should be foreclosed from raising this issue. See MCR 2.118(C)(1) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings.")

However, because defendants terminated the purchase agreement before plaintiffs' performance was due under the contract, the trial court did not err by ruling that plaintiffs' failure to complete all conditions precedent did not prevent them from proving breach of contract. The evidence demonstrated that Makki Investment notified plaintiffs on August 6, 2018, that it was terminating the purchase agreement. Closing was not scheduled to occur until September 15, which would have given plaintiffs more than five weeks to complete all necessary requirements for closing. There was no evidence that any performance obligation by plaintiffs was due by August 6, 2018, when Makki Investment terminated the purchase agreement.

The trial court denied defendants' earlier motion for summary disposition because there was a question of fact whether defendants breached the contract by terminating it or merely defaulted under the contract. The purchase agreement treated these as separate events, providing as follows:

### 14. **Termination and Default**

14.1  Termination Events:

14.1.1.  Either party may terminate this Agreement due to an event and or [sic] none [sic] fulfillment of any obligation or satisfactions set forth in Sections 5, 6, 7, 8 or 10 above.

14.1.2.  By Purchaser and Seller in a written agreement.

14.2.  Default

14.2.1.  By Purchaser. If Purchaser defaults and said default cannot be cured before Closing, this Agreement shall terminate and Seller shall be entitled to the Deposit as Seller's sole and only remedy.

14.2.2.  By Seller. If Seller defaults and said default cannot be cured before Closing, Purchaser's sole and exclusive remedies, shall be to terminate this Agreement in which event the Deposit will be returned to the Purchaser in full termination of this Agreement and neither party will have any further obligations to the other[.]

After hearing the evidence at trial, the trial court found that defendants terminated the purchase agreement without cause, for the purpose of selling the property to another buyer at a higher price. The court also rejected defendants' argument that plaintiffs could not prevail because they did not fulfill all conditions precedent, reasoning:

Section 14 of the purchase agreement talks about defaults and terminations. Um—14.1 talks about termination event—either party may terminate due to an event or nonfulfillment of any obligation or satisfaction set forth in certain sections of the agreement, or by the purchaser and seller in written agreement. There was no written agreement and the Defendant has made a point of saying well the Plaintiff did not comply with all the terms and all the conditions precedent to the um—closing. Unfortunately the plaintiff—or the Defendant terminated the agreement long before defendants—or Plaintiffs [sic] obligations to comply with everything were due.

So basically the Court finds that the agreement was terminated without cause by the plaintiff and the def—by the Defendant and the Plaintiff suffered damages. The Court's already ruled in its determination of summary disposition given the argument about default as opposed to termination. There was no default by the Plaintiff in this case. This was a strict termination by the Defendant.

A party claiming breach of contract must prove by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) damages resulted to the party claiming a breach. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). This Court reviews de novo, as a question of law, the proper interpretation of a contract. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written. [*Id*. (cleaned up).]

Defendants argue that plaintiffs were responsible for first breaching the contract by failing to perform all conditions precedent. A party who first breaches a contract cannot maintain an action against the other party for his or her subsequent breach or failure to perform. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). This rule only applies when the initial breach is substantial. *Id*. Whether a substantial breach occurred depends on "whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). Alternatively, a substantial breach is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (cleaned up).

-4-

A condition precedent is a fact or event that the parties intended must have occurred before there is a right to performance. *Able Demolition*, 275 Mich App at 583. The failure to satisfy a condition precedent prevents that party from bringing a cause of action on the basis of the other party's failure to perform. *Id*.

In support of their argument that plaintiffs failed to perform all necessary conditions precedent, defendants rely on the following portions of the contract:

> 8. <u>Conditions Precedent to Seller's Obligation</u>. Seller's obligation to consummate the transactions contemplated by this Agreement is subject to the fulfillment (or waiver by Seller) of each of the following conditions *before or at the Closing date*:
>
>            *   *   *
>
> 8.2   Performance of Covenants:   Purchaser shall have in all respects performed and complied with its obligations under all covenants, agreements, and conditions that this Agreement requires to be performed or complied with *before or on the Closing date*.
>
> 8.3   Fuel Supply Contract. *At or before Closing*, Seller shall assume the fuel supply contracts and or fuel brand/supplier restriction with Safiedine Oil Company, Inc.
>
>            *   *   *
>
> 26.   Assumption of Fuel Supply Contract:   As condition precedent to Seller's obligations *to close*, Purchaser shall assume all obligations of Seller pursuant to a fuel supply contract between Seller/Seller's affiliate Safeidine [sic] Oil Company, Inc. [Emphasis added.]

As indicated by the emphasized language, each of these requirements were a condition precedent to *closing*. However, defendants terminated the purchase agreement more than five weeks before the scheduled closing date, before satisfaction of these conditions was required. There was no evidence that plaintiffs substantially breached the purchase agreement before defendants gave notice that they were terminating the agreement. Rather, Makki Investment merely announced that it was terminating the agreement, without offering any reason. Indeed, at trial, Makki was unable to state how plaintiffs had failed to fulfill a necessary duty under the purchase agreement at the time he terminated the agreement.

As explained in *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 555; 904 NW2d 192 (2017):

> Under the doctrine of anticipatory repudiation, if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance. In determining whether an anticipatory breach has

occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held. [Cleaned up.]

The evidence supports the trial court's finding that Makki Investment terminated the purchase agreement more than five weeks prior to the scheduled closing, well before plaintiffs were reasonably expected to perform all conditions precedent. Plaintiffs' principal, Ali Ftouni, testified that plaintiffs were on course to satisfy all necessary conditions before the closing date. There was no evidence that plaintiffs substantially breached the purchase agreement before Makki Investment terminated the agreement. Accordingly, the trial court did not clearly err by finding that any conditions precedent were not due to be performed by plaintiffs at the time Makki Investment terminated the agreement. Once Makki Investment indicated that it was terminating the agreement, without legal cause to do so, plaintiffs were not required to continue to perform under the agreement until the date of performance (i.e., the date of closing) in order to sue for breach of contract.

## II. DAMAGES

Defendants argue that the trial court erred by awarding plaintiffs damages of $5,000 for legal fees and $6,000 for bank charges related to the transaction. Defendants argue that these awards were improper because the parties' purchase agreement expressly provided that the parties would be responsible for their own expenses for professional services. We disagree.

"The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "The remedy for breach of contract is to place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v Huron Castings, Inc*, 450 Mich 620, 625; 544 NW2d 278 (1996).

At trial, plaintiffs offered evidence that they paid $5,000 to their attorney for his work in relation to the purchase agreement and setting up the plaintiff corporate entities, one of which would own the real property and the other would operate the businesses, and paid another $6,000 to Huntington Bank for services associated with obtaining financing for the purchase. Defendants argue that plaintiffs were not entitled to recover damages for these fees because § 13 of the purchase agreement provided that "[e]ach [p]arty shall bear its own expenses and fees, including fees of professionals, incurred in this transaction."

The trial court found that the disputed fees were part of plaintiffs' damages, stating:

> Okay. Damages on a breach of contract claim flow from—it would be the—the reasonable damages that would flow from the breach; in this case the reasonable damages are clear. . . . The Plaintiff had—incurred expenses that he needed to incur in order to complete this deal that the Defendant without reason or cause terminated; that was $6,000.00 in bank charges, $5,000.00 to Mr. Rageas.

Although plaintiffs would have been responsible for their own fees and expenses if the transaction had closed, by terminating the purchase agreement without cause, and thereby breaching the agreement, defendants caused those expenses to be incurred unnecessarily. The

expenses were incurred in the process of consummating plaintiffs' purchase of the properties as contemplated by the purchase agreement. However, defendants' breach of the agreement prevented plaintiffs from obtaining any benefit from those incurred expenses. Plaintiffs were entitled to be made whole when they were denied the right to purchase the properties. The legal fees and bank charges were a direct and natural result of Makki Investment's acceptance of the purchase agreement. Plaintiffs were deprived of any benefit of those services once Makki Investment terminated the agreement. Had Makki Investment not breached the purchase agreement and the transaction been completed, plaintiffs would not have been entitled to recover the disputed expenses. But because Makki Investment breached the contract, reimbursement of these fees were properly awarded as a direct, natural, and proximate result of the breach. Accordingly, the trial court did not err by awarding plaintiffs damages of $11,000 for the disputed fees and bank charges

## III. PIERCING THE CORPORATE VEIL

Defendants also argue that the trial court erred by allowing plaintiffs to "pierce the corporate veil" to hold Makki personally liable for Makki Investment's breach of the purchase agreement. We disagree.

We review de novo a trial court's decision whether to pierce a corporate veil because this is an equitable remedy. *Florence Cement Co v Vettraino*, 292 Mich App 461, 468; 807 NW2d 917 (2011), amended 292 Mich App 801 (2011).

"In order for a court to order a corporate veil to be pierced, the corporate entity (1) must be a mere instrumentality of another individual or entity, (2) must have been used to commit a wrong or fraud, and (3) there must have been an unjust injury or loss to the plaintiff." *Id.* at 469.

The facts support the trial court's ruling that plaintiffs be allowed to pierce the corporate veil to hold Makki personally liable for the damages caused to plaintiffs. Makki was the sole shareholder of Makki Investment. The testimony supported that he was using the corporate entity for his personal benefit. Makki continued to list the properties for sale despite entering into a binding purchase agreement with plaintiffs, and he unilaterally terminated the purchase agreement with plaintiffs without cause after apparently finding a better deal. Moreover, at trial, Makki claimed that Makki Investment did not actually own the personal property associated with the gasoline station, and that another of his companies, Sara Corporation, was the actual owner. The trial court found that, if true, that would be fraud upon the buyers because Makki Investment had represented that it owned the property and business. The court also found that Makki lied when he stated that plaintiffs had offered an additional $100,000 "under the table" to complete the sale. The court stated:

> Let's talk about the Defendant. The Defendant's testimony is inherently incredible. The Court finds that the Defendant probably just made some mistakes as he doesn't want to go—the Court doesn't want to go any further than that at this point but there's—the Court does not believe that there was [an] $100,000.00 under the table offer made by the Plaintiff. Nor does the Court believe that um—ah— well the Court does believe that the Defendant attempted to mislead the Court by indicating that some other company owned the personal property when he in section

-7-

10.2 specifically indicated that he was the sole owner of the personalty (sic) and he signed that in—I believe he signed that purchase agreement.

Plaintiffs suffered a loss as a result of Makki's conduct because plaintiffs waived other business opportunities in anticipation of purchasing defendants' business, and ended up with nothing. On the other hand, defendants made direct financial gains by selling the properties already under contract to another buyer for a greater amount. Because the properties had already been conveyed to another buyer, plaintiffs could not compel specific performance of the contract. They could only be compensated by an award of damages. Defendant Makki was solely responsible for all the egregious conduct, but holding only Makki Investment liable for the judgment ran the risk that the judgment may never be collected.

Although defendants argue that there was no evidence that Makki Investment would not be able to pay the judgment, that is not a basis for not piercing the corporate veil and imposing personal liability against Makki. See *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 715; 762 NW2d 529 (2008) ("There is no single rule delineating when a corporate entity should be disregarded . . . ." (cleaned up)). Makki's unethical and fraudulent conduct supports the trial court's decision to pierce the corporate veil and impose personal liability for the judgment on Makki, along with Makki Investment.

## IV. COSTS AND ATTORNEY FEES

Section 15.4 of the purchase agreement provided that "[i]n the event of any litigation relating to this Agreement, the prevailing party shall be entitled to recover from the losing party its costs and expenses of the litigation, including reasonable attorneys' fees." The trial court agreed that the issue of attorney fees would be decided postjudgment, after it was determined who the prevailing parties were. The court entered its judgment for plaintiffs on January 10, 2020, and then conducted proceedings in June 2020 to resolve the issue of attorney fees and costs. After conducting an evidentiary hearing, the trial court entered orders on June 15 and 17, 2020, awarding plaintiffs their requested costs and attorney fees of $41,110.66, and amended its original judgment to include this additional amount.

Defendants argue that plaintiffs were not entitled to attorney fees because they did not present evidence of their attorney fees at trial. As indicated, however, the trial court agreed to address the issue of attorney fees postjudgment. Even when attorney fees and costs are awarded pursuant to a contract, practical reasons support a trial court deciding that matter postjudgment. As plaintiffs observed at trial, the parties' contract provided that only a prevailing party is entitled to recover attorney fees and their status as prevailing parties could not be determined until after the court decided whether Makki Investment breached the purchase agreement and whether plaintiffs were entitled to damages. Moreover, as a practical matter, it is difficult for a court to determine the amount of fees incurred or what is a reasonable amount to award in relation to the results achieved before it decides the underlying claims. In this case, there was no jury. The trial court was deciding both the underlying claims and any award of attorney fees and costs. There was no reason why the trial court could not later decide the issue of attorney fees and costs after resolving the underlying claims at trial. Plaintiffs' failure to offer evidence of their attorney fees and costs at trial did not waive this issue or bar them from presenting evidence at a postjudgment hearing.

Defendants also argue that the trial court lacked jurisdiction to rule on the request for costs and attorney fees after they filed their claim of appeal from the January 10, 2020 judgment on January 21, 2020. Defendants contend that once the claim of appeal was filed, the trial court lacked jurisdiction to decide the issue of attorney fees and amend its original judgment. We disagree.

MCR 7.208(A) provides that once a claim of appeal is filed, "the trial . . . may not set aside or amend the judgment or order appealed," except by order of this Court, stipulation of the parties, after a decision on the merits in an action in which a preliminary injunction was granted, or "as otherwise provided by law." One exception to this rule is MCR 7.208(J), which recognizes that after a claim of appeal is filed, "[t]he trial court may rule on requests for costs or attorney fees under MCR 2.403, 2.405, 2.625 or other law or court rule, unless the Court of Appeals orders otherwise." Although attorney fees in this case were not awarded under MCR 2.403, 2.405, or 2.625, the trial court retained the authority to rule on plaintiffs' motion for costs and attorney fees under the "other law" provision of MCR 7.208(A), and similarly, the trial court properly could amend the January 10 judgment to include the attorney-fee award under the "otherwise provided by law" provision of MCR 7.208(A)(4).

Generally, attorney fees in Michigan "are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Skaates v Kayser*, 333 Mich App 61, 84; 959 NW2d 33 (2020) (cleaned up); see also *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). In this case, plaintiffs requested attorney fees pursuant to the parties' contract, which is a recognized exception under Michigan law that allows a prevailing party to recover attorney fees. See *Fleet Business Credit, LLC*, 274 Mich App at 589.

Further, deciding the issue of attorney fees and costs postjudgment did not prejudice defendants' ability to appeal any adverse decision as of right. The language in MCR 7.208(J) mirrors the language in MCR 7.202(6)(a)(iv), which recognizes that "a postjudgment order awarding or denying attorney fees and costs under MCR 2.403, 2.405, 2.625 or other law or court rule" qualifies as a final judgment or order, which is appealable as of right under MCR 7.203(A)(1). However, because the postjudgment order awarding attorney fees independently qualifies as a final order under MCR 7.202(6)(a)(iv), and was appealable by right under MCR 7.203(A)(1), and because defendants did not file a claim of appeal from that postjudgment order, this Court does not have jurisdiction to consider defendants' substantive challenge to the trial court's attorney-fee order.[3] See *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009) (where the plaintiff filed a claim of appeal from an April 28, 2008 divorce judgment, but did not file a claim of appeal from a May 15, 2008 postjudgment order awarding attorney fees, this Court held that "[b]ecause plaintiff was required to file a separate claim of appeal from the post-judgment order and he did not, we lack jurisdiction to consider [the attorney-fee] issue").

---

[3] Although this Court denied defendants' motion to amend their January 21, 2020 claim of appeal to incorporate the attorney-fee order, this Court's order did not prohibit defendants from filing a separate claim of appeal from the attorney-fee order.

-9-

In sum, the trial court retained the authority to separately address plaintiffs' motion for attorney fees and costs after entry of the January 10, 2020 final judgment, and similarly, the trial court was permitted to amend that judgment to incorporate its decision regarding attorney fees. But because defendants did not file a claim of appeal from the trial court's postjudgment order regarding attorney fees, this Court does not have jurisdiction to review any issues related to that order.

Affirmed.

/s/ David H. Sawyer
/s/ Mark T. Boonstra
/s/ Michelle M. Rick